IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:  : CIVIL ACTION

MARGARET FIELDS,  : NO. 06-1753
     Debtor

MARGARET FIELDS,
     Plaintiff and Appellant

v.

OPTION ONE MORTGAGE CORPORATION
     Defendant and Appellee
and COMMON MORTGAGE SERVICES, INC.,
     Defendant

BRIEF OF APPELLANT

DAVID A. SCHOLL
6 St. Albans Avenue
Newtown Square, PA. 19073
610-353-7543
Attorney for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................i

TABLE OF CITATIONS ................................................................................................ ii

STATEMENT OF BASIS OF APPELLATE JURISDICTION ........................................1

STATEMENT OF ISSUES ON APPEAL AND STANDARD OF REVIEW ................2

STATEMENT OF THE CASE..........................................................................................3

ARGUMENT.....................................................................................................................7

    A. BUT FOR ITS ERRONEOUS ANALYSIS OF THE TITLE INSURANCE ISSUE, THE BANKRUPTCY COURT RECOGNIZED THAT THE DEBTOR WAS INDEED ENTITLED TO RESCIND THIS TRANSACTION .................7

    B. THE BANKRUPTCY COURT ERRED IN FAILING TO HOLD THAT THE TITLE INSURANCE OVERCHARGE WAS INDEED REQUIRED TO BE INCLUDED IN THE FINANCE CHARGE ...............................................10

CONCLUSION................................................................................................................14

CERTIFICATION OF SERVICE....................................................................................15

APPENDIX "A" ..............................................................................................................16


# TABLE OF CITATIONS

**Cases**

Belini v. Washington Mutual Bank, FA, 412 F.3d 17 (1st Cir. 2005) ......9

In re Strong, Bankr. No. 01-35854, Adv. No. 02-626 (Banr. E.D. Pa. Aug. 31, 2004), Aff'd, 2005 WL 1463245 (E.D. Pa. June 20, 2005), ......11, 12, 13

Johnson v. Banc One Acceptance Corp., 278 F. Supp. 2d 450 (E.D. Pa. 2003), recon. in part, 2003 WL 23515757 (E.D. Pa. Aug. 5, 2003), principle of law reiterated, 2004 WL 1179335, *6 (E.D. Pa. May 26, 2004)......7, 8

**Statutes**

12 C.F.R. § 226.15......9

12 C.F.R. § 226.32......8

12 C.F.R. § 226.4......7

15 U.S.C. § 1601......7

15 U.S.C. § 1602......8, 9

15 U.S.C. § 1605......7

15 U.S.C. § 1639......9

28 U.S.C. § 158......1

**Other**

Manual of Title Insurance Rating Bureau of Pennsylvania §§ 5.6 & 5.3, 2.8 & 2.9......10, 11, 12

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

This is an appeal of a final Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania which entered judgment in an adversary proceeding brought by the Debtor in favor of Defendant OPTION ONE MORTGAGE CORPORATION ("OOMC"). This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. section 158(a)(1).

## STATEMENT OF ISSUES ON APPEAL AND STANDARD OF REVIEW

1. Since the pertinent provision of the Manual of Title Insurance Rating Bureau of Pennsylvania ("the Manual") requires that a certain reduced rate for title insurance be provided to an insured owner of real property without exception "[w]hen a refinance or substitution loan is made within 3 years from the closing of a previously insured mortgage" of the same property by the same owner, did the Bankruptcy Court ("B.Court") properly add a requirement that the borrower must prove that the lender "knew or should have known" that she qualified for the lower rate in order to successfully maintain that she had a right to receive that lower rate?

2. Was it appropriate to impose any duty of proof concerning requirements to be met regarding reduced pricing of title-insurance rates upon a now-disabled 82-year-old borrower whose memory of the transaction, closed when she was almost 79 years of age, was sketchy?

3. If it had found that the title insurance charge to the borrower was excessive, was the B.Court obliged to rule in favor of the borrower in this proceeding?

The standard of review on all issues is whether the court correctly applied the applicable law, as the matter was presented on a stipulated record.

## STATEMENT OF THE CASE

MARGARET FIELDS, the Debtor and Plaintiff in this adversary proceeding ("the Debtor"), was represented by F. Lee Smith-Lewis, Esq., an attorney who gave up her bankruptcy practice and whose cases were reassigned, when she filed the underlying individual Chapter 13 bankruptcy case on August 5, 2003. (Main Case Docket Entries). Present counsel entered his appearance and Ms. Smith-Lewis withdrew on December 2, 2003. (Id.). A Motion for relief from the automatic stay filed by Option One Mortgage Corporation ("OOMC") on November 17, 2003, was continued several times until May 11, 2004, when it was withdrawn. (Id.) The instant adversary proceeding ("the Proceeding") was filed on January 6, 2004. (Id.).

The Debtor's Second Amended Plan, with an Addendum filed on October 10, 2005 ("the Plan"), was confirmed on October 13, 2005. (Id.). The Plan provides that OOMC's claim will be litigated in the Proceeding but not otherwise treated in the Plan, and that all other creditors will be paid in full. (Id.). The Debtor has paid sums sufficient to obtain her discharge under the Plan.

The litigation of the Proceeding was delayed by securing the correct identity of the co-defendant loan broker, ultimately agreed to be Common Mortgage Services, Inc. ("Common"). (Adversary Docket Entiries). On August 31, 2005, a settlement between Common and the Debtor was approved by the B.Court. (Id.). The trial of the claims against OOMC was scheduled in September, 2005, but was continued until November 17, 2005, because the Debtor became hospitalized. (Id.). On November 7, 2005, the parties filed a Stipulation wherein, due to the continuing and perhaps permanent incapacity of the Debtor, they agreed to submit the Proceeding to the B.Court on a Stipulation of Facts ("the Fact Stip.") and Briefs. The B.Court

3

entered an Order of November 15, 2005, allowing that procedure and directing that the Fact Stip. be filed by November 30, 2005, and that the parties "post-trial" memoranda follow by December 30, 2005, and January 30, 2006, respectively. The Fact Stip. was in fact filed, with numerous Exhibits attached thereto, on November 30, 2005. The Debtor filed her opening Brief ("the O.Brief") on December 29, 2005. (Adversary Docket Entries). OOMC filed a Brief to which it attached numerous additional exhibits on January 30, 2006. (Id.). The Debtor filed a Reply Brief on February 14, 2006. (Id.).

On March 24, 2006, the B.Court filed a Memorandum and Order ("the Memo") which supported entry of a judgment in favor of OOMC. The B.Court held, for purposes of its decision, that $13 of the notary charge was improperly excluded from the finance charge. (Memo, at 33-34). As will be demonstrated below, the decision turned on the B.Court's holding that it was necessary that the Debtor prove that OOMC knew or should have known that she was eligible for a lower title insurance policy cost than she was charged in connection with this transaction. (Memo, at 26-33). It is the Debtor's position that she had no such burden of proof, and that the Manual makes clear that imposing an overcharge is per se "unreasonable" and triggered her right to rescind this transaction. An appeal was therefore taken on March 31, 2006.

The underlying facts are as follows. The Debtor was born on March 6, 1923, and therefore is presently 83 years of age and was nearly 79 years old when she entered into a loan transaction at issue with OOMC on January 14, 2002, with the intention of consolidating her bills. (Fact Stip. at paras.1, 5, 6). Since the monthly payments of $765.45/month constituted approximately 45% of the Debtor's monthly income (Exhibit ("X")-1; Schedule "I") and the payment term of 30 years would extend until the Debtor attained the age of 109 years, it was

4

apparent that repayment of this mortgage by the Debtor was problematic, if not impossible. For this reason, this transaction can be properly characterized as a "predatory loan," made without a reasonable consideration of the borrower's ability to pay.

In making this loan, the Debtor liquidated two prior mortgages against her permanent residence at 6805 Sprague Street, Philadelphia, PA. 19119 ("the Home"), from Mellon Bank ("Mellon"), dated dated October 24, 1991; and Commercial Credit Corp.("CCC"), dated May 25, 1999, respectively. (Id. at 3, 7). The Plaintiff obtained title insurance on the Home in both of these transactions. (Id. at 7).

The charges which OOMC agrees were included in the "Prepaid Finance Charge" in the transaction comes to a total of $5947.00. (Id. at 22). The responses to discovery by OOMC make clear that it is the "points and fees" "portion" of the "Prepaid Finance Charge" which comes to $5947.00. (Exhibit ("X") 6, para. 10b). Not included in the "Prepaid Finance Charge" were, inter alia, a $25.00 charge by one Walter Ackah for a "Notary Fee;" or any of the charges for "hazard insurance" or "title insurance." (Id. at 23).

With respect to title insurance, the Debtor was charged the "basic rate" of $756.75 fixed by the Manual of Title Insurance Rating Bureau of Pennsylvania ("the Manual") for a loan in the amount of $83,000, the amount of the loan in question. (Id. at 24 & Exhibit ("X") P-7, Schedule of Rates Under Company or Agency Procedure). The policy, a copy of which is attached to the Fact Stip., was written by Lawyers Title Insurance Corporation, which is a "member" of the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP"), as indicated in the first page of the Manual (Appendix "A" to the O.Brief). As the explanation of the effect of the Manual indicates, its provisions are "binding" upon its "members." (Id.). The Manual fixes

the rate for "refinance and substitution" loans, i.e. loans made within three years from the closing of an identically insured loan, at the time of this loan in the amount of $83,000 at $544.86. (Id. at 24, X-7, para. 5-6 of Manual). Therefore, there was an overcharge of $211.89.

The Debtor also raised questions regarding the charges imposed for the "Notary Fee" of $35.00 and the hazard insurance charge of $684.00 in this transaction. The maximum amount which is chargeable for notary services under applicable Pennsylvania law is $2.00. 57 P.S. section 167. The "Affidavit of Settlement Agent" executed by Mr. Ackah which is attached to the Fact Stip. references only "the Promissory Note, Mortgage/Deed of Trust/Security Deed and any Riders thereto" which he certified and delivered and four additional Affidavits are attached thereto. OOMC did not identify more than six documents notarized by Mr. Ackah.

The Debtor is no longer pressing any claim that the charges for hazard insurance were improperly excluded from the finance charge. She believes that a correct analysis of the title insurance issue must result in a decision in her favor.

## ARGUMENT

### A. BUT FOR ITS ERRONEOUS ANALYSIS OF THE TITLE INSURANCE ISSUE, THE B.COURT RECOGNIZED THAT THE DEBTOR WAS INDEED ENTITLED TO RESCIND THIS TRANACTION

It is clear that, were it not for the B.Court's erroneous decision regarding the sufficiency of the record to support the conclusion that at least the overcharge of the title insurance cost was illegally excluded from the finance charge, the Debtor would have prevailed in her claim which asserted a right to rescind this transaction.

The starting point for this conclusion are the general principles set forth in the federal Truth-in-Lending Act, 15 U.S.C. section 1601, et seq. ("the TILA") for determining what charges must be disclosed as part of the finance charge in a loan transaction. Generally, "the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. section 1605(a). There are also further requirements which must be met by a lender to exclude any type of real estate-related fees from the finance charge in a residential mortgage transaction. That is that the fees must be "bona fide and reasonable in amount:..." 12 C.F.R. section 226.4(c)(7). Fees charged in violation of applicable law cannot meet these criteria. See Johnson v. Banc One Acceptance Corp., 278 F.Supp. 2d 450, 456 (E.D. Pa. 2003), recon. in part, 2003 WL 23515757 (E.D. Pa. Aug. 5, 2003), principle of law reiterated, 2004 WL 1179335, * 6 (E.D. Pa. May 26, 2004) (title insurance charges in excess of those allowable under state law are not "bona fide and reasonable" and must be counted as part of the finance charge in determining

whether a loan is within the scope of HOEPA). See also In re Brown, 134 B.R. 134, 144-45 (Bankr. E.D. Pa. 1991) (charges in loan transaction rendered illegal because the transaction is in fact within the scope of the HIFA constitute violations of the TILA).

Applied to this law and considering only the title insurance overcharge, the undisputed facts are sufficient to support a judgment in favor of the Debtor on the issue of whether the "Prepaid Finance Charge" was accurately disclosed and whether, as a result of the inaccurate disclosure of same, the Debtor had a right to rescind the transaction. Considering only the issue of the excessive title insurance charge, the $211.89 charge for title insurance above the amount allowable per the Manual is not "reasonable" in amount. Johnson, supra, 278 F.Supp. 2d at 456-57, 2004 WL 23515757, at *6-8. As such, it was a "cost" which had to be included in the "points and fees" disclosed in the transaction. When the $211.89 overcharge is added to the $5947.00 already included in the "Prepaid Finance Charge," the sum is $6158.89.

The "total loan amount" in the transaction is ascertained by deducting the "points and fees" in the transaction from the amount financed therein. Official Staff Commentary on Regulation Z Truth in Lending ("the Commentary"), 12 C.F.R. section 226.32, para. 1. The difference between $83,000 and $6158.89 is $76,841.11. One measure for whether this loan fell within the category of "special loans" within the scope of the Home Ownership and Equity Protection Act ("HOEPA") provisions of the TILA is whether the "total points and fees" payable by the consumer in the transaction exceeded eight (8%) percent of the "total loan amount" in the transaction. 15 U.S.C. section 1602(aa)(1)(B)(i). Eight percent of the "total loan amount" of $76,841.11 equals $6147.29. The "total points and fees" of $6158.89 exceeded that amount.

From the foregoing analysis, it clearly follows that the failure to include the

overcharge of $211.89 in the cost of title insurance as part of the finance charge in this transaction would, in and of itself, result in "points and fees" which would place this loan within the scope of HOEPA. The Fact Stip. specifically states that OOMC did not provide the Debtor with any of the pre-settlement disclosures which are required in HOEPA loans, 15 U.S.C. section 1639(a), apparently because it erroneously believed that the instant loan was not a HOEPA loan. (Fact Stip., para. 21). The failure to provide any of the disclosures required by 15 U.S.C. section 1639(a) constitutes a "material disclosure" violation. 15 U.S.C. section 1602(u). In addition, the failure to accurately disclose the "finance charge" and the "annual percentage rate" of the finance charge are themselves "material violations" of the TILA, which trigger a right to rescind. Id. The failure to provide the Debtor with a "material disclosure" required by the TILA extends the time for effecting a rescission to three years from the date of the transaction. 12 C.F.R. section 226.15(a)(3). The Debtor's rescission of the loan by her counsel's letter of November 26, 2003 (Fact Stip., para. 13), was well within the time for doing so. By failing to honor this request, which was reiterated in the Complaint filed in the Proceeding on January 6, 2004 (Id. at 14, 16; Second Amended Complaint), OOMC rendered itself subject to the consequences of having failed to have adhered to a valid and timely rescission request. In fact, the failure to respond to the rescission notice was itself a violation of the TILA, which results in adverse consequences for OOMC. See Belini v. Washington Mutual Bank, FA, 412 F.3d 17, 24-25 (1st Cir. 2005).

    The instant analysis is consistent with that of the B.Court and was in no sense contradicted by OOMC. Therefore, the only issue which need be focused upon to resolve this appeal is the error of the B.Court in refusing to hold that the title insurance overcharge should

have been included in the finance charge as disclosed in this transaction.

### B. THE B.COURT ERRED IN FAILING TO HOLD THAT THE TITLE INSURANCE OVERCHARGE WAS INDEED REQUIRED TO BE INCLUDED IN THE FINANCE CHARGE

The pertinent Manual provision, Section 5.6 thereof, provides as follows:

> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or a part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate. ...

The Reissue Rate is applicable if the property is identical or part of a property previously insured in the past 10 years, and is in the amount of 90% of the "basic rate." Manual, Section 5.3. There is a provision in the Manual stating that the Reissue Rate applies only when "evidence of an earlier policy is produced." No indication is made who has to produce what to satisfy this provision.

However, any comparable provision, requiring any "evidence of an earlier policy" to be "produced" is absent from Section 5.6 of the Manual. This provision is self-executing. Therefore, the B.Court erred in adding a non-existent and, frankly, totally impractical requirement that the Debtor was obliged to prove that OOMC knew or should have known that the Debtor qualified for the Refinance or Substitution Rate ("the Refi Rate"). In fact, it is very likely that OOMC, as the lender in this transaction, did in fact know and certainly should have known that the Debtor qualified for the Refi Rate. Meanwhile, it was totally impractical to have supposed that the Debtor, then a 78-year-old widow whose cognitive powers had begun to fail her, knew or should have known that she was being overcharged for title insurance and was

bound to bring this to the attention of OOMC (whose representatives she never met) or some other unreferenced party to be entitled to the lower rate.

Furthermore, in her Reply Memo, the Debtor pointed out that, in August, 2005, the Manual was amended not in substance, but to clarify Sections 5.6 and 5.3. Copies of new Sections 2.8 and 2.9, which address this subject, were attached thereto as Appendix "A" and are attached hereto as Appendix "A" as well. Section 2.8 provides that, as to both Sections, "evidence" of previous insurance is provided by the production of any of the following documents: a settlement sheet showing a previous payment of a title insurance premium or other written evidence that such insurance was purchased. The parties here stipulated to the presence of a title insurance policy in the Debtor's prior transaction of May 25, 1999, with Commercial Credit Corp. ("CCC"), as same appeared on the Title Report obtained by the broker or OOMC in the loan application process. Therefore, as clarified by the August, 2005, amendments, there was surely "evidence " of a prior policy. Section 2.9 requires that any purchaser of title insurance be given notice of the right of the purchaser of title insurance to a potentially reduced rate. Clearly, this notice is required because of the recognition that purchasers are not aware of their right to reduced rates, assuming that they even know what title insurance is for or that they are paying for the purchase of same in a loan transaction. Had she received such a notice, the Debtor may have become aware of her right to a lower title policy charge.

In addition, the Debtor cited to In re Strong, Bankr. No. 01-35854, Adv. No. 02-626 (Bankr. E.D. Pa. Aug. 31, 2004), aff'd, 2005 WL 1463245 (E.D. Pa. June 20, 2005), where the same B.Court judge appeared to have put to rest any contention that the borrower had any

burden of producing evidence to support the presence of title insurance in a prior transaction because the lender would clearly have superior access to information about the presence of title insurance in the prior transaction than would the borrower. Moreover, in Strong, the B.Court was addressing the borrower's eligibility for the "Reissue Rate," triggering the Section 5.3 language that might have, in contrast to the Section 5.6 language, supported placing some onus on the borrower to produce evidence of a prior policy. The B.Court there held that the borrowers did not qualify for the "refinance rate" set forth in Section 5.6 because there was a change in the ownership of the insured residence in issue at the time of the loan. Slip op. at 78-79. Here, there has been no change in ownership between the time of the Plaintiff's prior loan from CCC and the instant loan. However, pertinent to this proceeding is this court's holding that, even as to the applicability of the Section 5.3 "reissue rate," the familiarity of the lender with the existence of the prior loan including title insurance was held sufficient, in a proper factual setting of a lack in change of ownership, to trigger the lower rate. Id. at 79-80.

    The B.Court made an unconvincing pass at attempting to distinguish its statements in Strong from its result here. It states that the plaintiffs in that case made a showing that the lender there had some familiarity with the prior loan, while the Debtor here presented no such evidence, and then cites two cases where the respective courts found no evidence that a prior loan was insured. Here, OOMC stipulated that the prior loan from CCC was insured. The instant record contains numerous documents, including the Settlement Statement, where OOMC or any other interested party could clearly observe that the Debtor had prior mortgages on the Home, which were almost to a certainty placed on the Home in transactions wherein the Home was also insured.

It is difficult to understand how the Debtor, too aged and infirm to attend a trial, should for that reason fail to prevail. As noted, the loan at issue was a classic "predatory loan," in the course of which advantage was taken of an individual whose ability to understand the transaction at issue and make the payments which were required was at best doubtful. It blinks at reality to suggest that such an individual should be made the victim of an overcharge of an item simply because she was not aware of the facts leading to her overcharge and was for that reason unlikely to protest the imposition of such charges.

It is not the position of the Debtor that she should prevail simply because she was not aware of her victimization of an overcharge. However, victimization of an individual so characterized is a practice which it is submitted that the law should prevent. The reason that the Debtor should prevail is because the B.Court found that she failed to meet a burden which the applicable Manual provision did not indicate in any way she had to bear. Her circumstances revealing an unlikelihood that she or any person so situated could possibly meet the burden placed upon her by the B.Court merely illustrate the lack of practicality of placing any such burden on a borrower. In sum, the B.Court appeared on the right track in <u>Strong</u> in placing the responsibility for all title insurance overcharges upon lenders, parties which certainly were positioned to prevent such occurrences. The retreat from that position in this case, in which the facts appeared to verify the wisdom of the court's holding in <u>Strong,</u> was, it is submitted, erroneous ansd should not be permitted to stand.

## CONCLUSION

For all of the reasons set forth herein, this court should reverse the Order of March 24, 2006, of the B.Court which entered judgment in favor of OOMC, enter judgment in favor of the Debtor as to her right to rescind this transaction, and either enter its own decision regarding the consequences of the failure of OOMC to adhere to the Debtor's proper rescission of the loan at issue, or remand the matter to the B.Court to provide plenary consideration to the issue of the appropriate remedy.

*[signature]*

DAVID A. SCHOLL
6 St. Albans Avenue
Newtown Square, PA 19073
610-353-7543
Attorney for Appellant

## CERTIFICATION OF SERVICE

I hereby certify that I served a copy of the Brief of Appellant in this matter upon counsel for OOMC, Heidi R. Spivak, Esq., Udren Law Offices, 111 Woodcrest Corporate Center, Suite 200, Cherry Hill, NJ 08003-3620; William C. Miller, Esq., P.O. Box 40119, Philadelphia, PA. 19106, the Standing Chapter 13 Trustee; and Frederic J. Baker, Esq., Senior Assistant United states Trustee, Suite 500, 833 Chestnut St., Philadelphia, PA. 19107, by first-class postage pre-paid on May 11, 2006.

DAVID A. SCHOLL
6 St. Albans Avenue
Newtown Square, PA 19073
610-353-7543
Attorney for Appellant